RICHMOND GUANO COMPANY v. FRANK C. WALSTON ET AL.

(Filed 7 May, 1924.)

**1. Mortgages — Deeds of Trust — Statutes — Cancellation — Register of Deeds.**

A statute will be construed to effectuate the legislative intent as gathered from its language, and to harmonize its various parts when this can reasonably be done; and *held,* that C. S., 2594, authorizing the register of deeds to cancel mortgages or other instruments by entry upon the margin of the registration book the word "satisfaction" upon exhibition to him of any mortgage, deed of trust or other instrument, accompanied by the bond or note, with the endorsement of payment and satisfaction by the payee, etc., does not exclude from the intent and meaning of the statute a deed of trust given for the purpose of securing a loan of money.

**2. Same—Fraud—Innocent Parties.**

Where the register of deeds has entered "satisfaction" of a deed of trust to secure borrowed money upon the margin of his registration book, upon the exhibition of the proper endorsement on the note and deed of trust by the payee, and thereupon subsequent mortgagees, etc., have acted in good faith, the prior fraud or collusion of the parties to the canceled instrument will not affect their rights when they were unaware thereof or had not participated in the fraud. C. S., 2594 (4).

**3. Appeal and Error—Nonsuit—Voluntary Nonsuit—Estoppel.**

Where the court has properly ordered an involuntary nonsuit as to some of the parties defendant, and thereupon the plaintiff has taken a voluntary nonsuit as to all, the plaintiff is concluded by his action from asserting error on appeal, for that he is entitled at least to judgment against those defendants as to whom he has taken his voluntary nonsuit.

GUANO CO. *v.* WALSTON.

APPEAL by plaintiff from *Daniels, J.,* at Spring Term, 1923, of NORTHAMPTON.

The material allegations of the complaint are as follows: On 22 February, 1921, Frank C. Walston, of Northampton, gave to Tomlinson & Company, Incorporated, of Wilson, his promissory note for $10,471.44, payable 15 November, 1921, to secure the payment of which he executed and delivered to D. M. Hill, trustee, of Wilson, a deed of trust on a tract of land containing 400 acres, situated in Northampton, and on certain personal property. The deed of trust was duly registered. Tomlinson & Company endorsed the note before maturity to the plaintiff, who took it without notice of any infirmity in the instrument or defect in the. endorser's title. No part of the note has been paid, and the. plaintiff is entitled to a foreclosure of the deed of trust. After this note had been endorsed to the plaintiff, Walston executed to Tomlinson & Company another note, purporting to be a duplicate of the first, in the sum of $10,471.44, which (the plaintiff alleges) was "spurious, forged, and pretended." The duplicate note and .the deed of trust to Hill were receipted and marked paid by Tomlinson & Company, and thereafter were exhibited by Walston to S. J. Calvert, register of deeds of Northampton County, who marked the record and registration thereof canceled and satisfied. The plaintiff alleges that this cancellation was void, because procured by Walston and Tomlinson & Company with knowledge that the plaintiff was the holder in due course of the original note, and with intent fraudulently to hinder, delay and defeat the plaintiff in the collection of the amount due him. After the registration was canceled by the register of deeds, Walston gave to the Prudential Life Insurance Company of America a note for $9,500 for borrowed money, and secured it by a deed of trust to the Chickamauga Trust Company on the land described in the deed of trust to Hill; afterwards he executed another deed of trust on the same land to H. G. Connor, Jr., of Wilson, to secure his indebtedness to S. W. Anderson; and, further, on 12 April, 1921, he gave to Tomlinson & Company another note for $10,471.44 and secured it by another deed of trust on the same land to D. M. Hill. The Armour Fertilizer Works claimed to have certain rights in this note. It is alleged that the creditors and trustees had knowledge of the plaintiff's title. J. T. Cullipher is the owner of two judgments taken and duly docketed in Bertie and Northampton. Walston, Tomlinson & Company and Cullipher are insolvent.

The plaintiff contends that it is entitled to a judgment on its note, to have declared void the cancellation of the note to Tomlinson & Company and the deed of trust to Hill, and to have the property sold to satisfy the amount due on the endorsed note.

S. J. Calvert, register of deeds, denies the material allegations of the complaint, and alleges that on 8 April, 1921, Walston exhibited to him the original deed of trust to Hill, duly marked satisfied and the note described therein paid, and that he thereupon canceled the deed of trust.

The defendant Walston, admitting certain allegations and denying others, alleges that he has paid the note to Tomlinson & Company; that it has never been assigned by them to any one; that the duplicate note was executed at their request, because the original had been lost; that he was afterwards informed that the lost note had been found and destroyed, and that the note and deed of trust were delivered to him duly canceled. He says that he acted in good faith, without intent to defraud and without knowledge of the plaintiff's claim, and that the notes and deeds of trust which he subsequently executed were intended to secure his indebtedness as therein provided.

The other defendants filed answers putting in issue the plaintiff's alleged cause of action and setting out in detail the circumstances under which the several mortgages and deeds of trust were executed. They alleged that the cancellation of the note to Tomlinson & Company and of the deed of trust to Hill was valid; that they did not know of any irregularity or defect in it; that the Prudential Company lent the money and that it was applied in payment or part payment of prior mortgages and deeds of trust. It is not necessary to set out in detail the several answers of the defendants.

The plaintiff's evidence, if accepted as true, establishes the following facts: In June, 1920, the defendant Walston applied to the Chickamauga Loan and Trust Company for a loan of $12,000, to be evidenced by notes and secured by a mortgage or deed of trust on a tract of land. At that time there were two mortgages and two deeds of trust on this land, registered and outstanding against him. The money, when borrowed, was to be applied in payment or part payment of these encumbrances. On 22 February, 1921, Walston executed and delivered to Tomlinson & Company a note for $10,471.44, payable 15 November, which he secured by a deed of trust to D. M. Hill. At that time he told N. L. Finch, secretary and treasurer of Tomlinson & Company, that he had applied for the loan and it was agreed between him and Finch that this deed of trust should be withheld from registration until after the consummation of the loan. Meanwhile the deed of trust was recorded. The loan of $9,500, instead of $12,000, was agreed upon, the Prudential Company to furnish the money, and the attorney who had examined the title then notified Walston that, in order to get the loan, the deed of trust must be canceled. Walston informed Tomlinson & Company, and the secretary and treasurer directed E. H. Steger, an employee of the company, to cancel the deed of trust in the name of the corporation,

and, as the original note could not be found, to prepare another, have Walston to sign it, and then mark it paid. This was done, and the note and deed of trust bearing such endorsements were exhibited to the register of deeds, who thereupon canceled the registration in his office. Tomlinson & Company had assigned and endorsed the original note to the plaintiff, but the register did not know the note shown him was a copy. No one knew it, except Finch, Steger, and Walston. The Prudential Company made the loan, and the money was applied in part payment of Walston's prior indebtedness, which was secured, as stated, by mortgages and deeds of trust. A new deed of trust was given to Connor, trustee, and the deed of trust securing the Prudential Company's loan was filed as a first mortgage, the deed securing Anderson as a second lien, and a new deed of trust to Tomlinson & Company as a third lien.

At the conclusion of the evidence the Prudential Company, the Chickamauga Company, P. L. Woodard, S. W. Anderson, H. G. Connor, Jr., trustee, and Armour Fertilizer Works moved for judgment of nonsuit, and, upon his Honor's intimation that there was a failure of proof, the plaintiff submitted to a voluntary nonsuit as to all the defendants. Thereupon, the defendants Anderson, Woodard, and Connor, trustee, made a motion for judgment against their codefendant, Frank C. Walston on the cause of action set out in their answer as against the said defendant, and it was ordered, adjudged and decreed by the court:

1. That the plaintiff's action be dismissed and the plaintiff be taxed with the costs thereof.

2. That the defendants P. L. Woodard and S. W. Anderson recover of the defendant Frank C. Walston the sum of $3,779.79, with interest thereon from 14 March, 1921, together with their costs.

There was an order of foreclosure in case the judgment was not paid within ninety days, and following it appears this paragraph:

"The judgment herein rendered in favor of P. L. Woodard and S. W. Anderson and H. G. Connor, Jr., trustee, for $3,779.79, with interest, and the deed of trust securing the indebtedness, is hereby declared to be a second lien upon the property conveyed in the deed of trust, subject to the indebtedness of the Prudential Life Insurance Company of America for $9,500, with interest from 18 February, 1923, payable annually, secured in the deed of trust to the Chickamauga Trust Company, but prior, however, to the lien upon the said property created by the deed of trust to D. M. Hill, securing the indebtedness, held by the Armour Fertilizer Works, Inc., the order of the said lien being as follows, to wit: (1) Prudential Life Insurance Company, $9,500, with interest from 18 February, 1923; (2) P. L. Woodard and S. W. Anderson, $3,779.79; (3) Armour Fertilizer Works, Inc., $10,471.44, with interest from 12 April, 1921. And in the event of a sale of said prop-

erty the proceeds arising therefrom shall be applied as follows: First, to the payment of said indebtedness of the Prudential Life Insurance Company of America; secondly, any surplus to the payment of said indebtedness of Woodard and Anderson; and, thirdly, any surplus remaining to the said indebtedness of Armour Fertilizer Works, Inc."

The plaintiff excepted and appealed.

*Bryce Little and Winston & Matthews for appellant.*
*H. G. Connor, Jr., and J. Crawford Biggs for appellees.*

ADAMS, J., after stating the case: The plaintiff contends that it is an innocent purchaser for value of the original note executed by Walston and secured by the deed of trust, and that its title and interest should be protected against the cancellation of the registered security, which, it is alleged, was fraudulently procured. The defendants contend that, even if the cancellation of the deed of trust was procured by the false representation of Walston and Tomlinson & Company, the register of deeds had no knowledge of the fraud, and wrote upon his records the entry of satisfaction in good faith and in conformity with the provisions of the statute; that prior encumbrances were on record against Walston's property, and that the Prudential Company, who made Walston the loan of $9,500, and the other defendants financially interested in the loan, having no knowledge or notice of any alleged irregularity or defect in the cancellation of the deed of trust, had the legal right, as innocent parties, to accept the record as true, and to act upon it in the examination of Walston's title.

The appeal, then, presents these two questions: (1) Were the appellees warranted in relying upon the register's cancellation of the deed of trust in the records of his office? (2) If not, may the Prudential Company and the other claimants be subrogated to the rights of prior creditors whose securities they have paid? If the first question be answered in the affirmative, the second need not be determined.

The plaintiff argues that the entry made by the register of deeds did not discharge or release the deed of trust executed by Walston to Hill on 22 February, 1921, and, in support of its position, lays down what it denominates four fundamental propositions. In considering these propositions we may remark incidentally that this action was instituted before the amendments of 1923 went into effect. Private Laws 1923, cc. 192, 195.

It is first insisted on behalf of the appellant that a register of deeds is not authorized to cancel a deed of trust under any circumstances. As the register's official duties are prescribed by the General Assembly, it becomes necessary to refer to the statute. Section 2594 of the Consoli-

dated Statutes provides, in part, that any deed of trust or mortgage which is registered as required by law may be discharged and released in the following manner: "Upon the exhibition of any mortgage, deed of trust, or other instrument intended to secure the payment of money, accompanied with the bond or note, to the register of deeds or his deputy, where the same is registered, with the endorsement of payment and satisfaction appearing thereon by the payee, mortgagee, trustee, or assignee of the same, or by any chartered active banking institution in the State of North Carolina, when so endorsed in the name of the bank by an officer thereof, the register or his deputy shall cancel the mortgage or other instrument by entry of 'satisfaction' on the margin of the record; and the person so claiming to have satisfied the debt may retain possession of the bond or mortgage or other instrument. But if the register or his deputy requires it, he shall file a receipt to him showing by whose authority the mortgage or other instrument was canceled."

The plaintiff says that a deed of trust is not embraced in the term "other instruments," and that the use of the words "mortgage, deed of trust, or other instrument," in the first line of this subsection, and the omission of the words "deed of trust" in the seventh line, conclusively show that the register is not given power to cancel a deed of trust. We do not assent to this proposition. In the construction and interpretation of a statute, elementary principles demand that its purpose and spirit be considered and the obvious intention of the Legislature ascertained and respected; and, in accordance with these principles, the language used should be given such meaning as will make it harmonious with the legislative intent. In order to ascertain such intent, effect must be given to all clauses and provisions, unless they are irreconcilably conflicting or antagonistic to the fundamental law. Modern authorities generally favor the interpretation of statutes according to the natural and obvious signification of the wording, without resort to subtle and refined construction, for the purpose of either limiting or extending their operation. *McLeod v. Comrs.*, 148 N. C., 77; *Pullen v. Corporation Commission,* 152 N. C., 548; *Kearney v. Vann,* 154 N. C., 311; *Tripp v. Comrs.,* 158 N. C., 180; *Manly v. Abernathy,* 167 N. C., 220; 25 R. C. L., 962; Black on Interpretation of Laws, 56. It will be noted, moreover, that section 2595 directs the register of deeds, or his deputy, to enter upon the alphabetical indexes, on a line with the names of the grantor and the grantee, the words "satisfied deed of trust," when it appears that the satisfaction of such instrument has been acknowledged. Considering the statute as a whole, we are of opinion that the natural and reasonable interpretation of the language must refer the words "mortgage or other instrument" to the first line of the section—

"mortgage, deed of trust, or other instrument"; that the clauses must be construed together, and that "other instrument" essentially includes "deed of trust."

The plaintiff further contends that the note and the deed of trust did not bear the endorsement of payment and satisfaction by the payee or assignee, and that the statute makes no provision for cancellation by the *cestui que trust*.

Walston conveyed the legal title to Hill in trust for the holder of the note. It is true that neither Hill, the trustee, nor the plaintiff, as endorsee of the note, acknowledged its payment and satisfaction; but the payee in the original note was Tomlinson & Company, not the trustee. The substituted note was a reproduction of the original, without the endorsement. The trustee, who is an attorney, drafted the original note and the deed of trust, and these papers were subsequently delivered to Tomlinson & Company. Between that time and the date of the trial, the trustee never saw them. When the note was endorsed, the deed of trust was retained by the payee. It did not go into the hands of the plaintiff at any time. If, then, it be conceded that the endorsement of the original note carried the security with it (*Williams v. Teachey,* 85 N. C., 402, 404) and conferred upon the plaintiff the equitable right to subject to sale the property described in the deed of trust, still the deed of trust and a duplicate note answering to the one therein described and purporting to be the original, bore the acknowledgment of payment and satisfaction, duly endorsed by Tomlinson & Company, the payee in the note. There is no evidence that the register of deeds knew that the note exhibited to him was a duplicate instead of the original, and the exhibition of these papers, with the endorsement thereon, conformed to the terms of the statute, and authorized the register, nothing else appearing to him, to cancel the deed of trust by the entry of "satisfaction" on the margin of the record. C. S., 2594 (2). *Bank v. Sauls,* 183 N. C., 165, 169. It was the payee in the note who authorized the exhibition of the papers to the register and consented to their cancellation.

In the next place, the plaintiff urges the proposition that the note exhibited to the register of deeds was not the note which was endorsed to the plaintiff, and that the cancellation of the deed of trust was either forged or procured by fraud, and should be declared void and stricken out. In this connection it may be well to recur to one or two familiar principles. Whether or not the essence of forgery consists in the making of a false writing with intent to utter it as the act of one other than the party signing it, or whether the maker of the original note and the payee named therein fraudulently conspired to deceive the register and thereby compass the cancellation of the deed of trust, we need not con-

43—187

sider. We are not dealing with the right of the plaintiff to have the cancellation declared void on the ground that the register was deceived, because none of the contesting defendants had knowledge of the alleged fraud of the maker and the payee of the note, and the present action was brought after the Prudential Company had made the loan without notice. The paramount and dominant question is whether the defendants were warranted in relying on the register's entry of satisfaction as a record which imported verity, and as to this any doubt formerly existing has been resolved against the plaintiff's contention. The statute provides that every such entry shall operate and have the same effect to release and discharge all the interest of such trustee, mortgagee, or representative in such deed or mortgage as if a deed of release or reconveyance thereof had been duly executed. C. S., 2594 (4). Our decisions are to the same effect. "It has been repeatedly declared to be sound public policy to remove every obstacle to the ready sale of real estate upon the market, in order to benefit commerce and thereby promote general prosperity. It was in furtherance of this object that our General Assembly, but a few years since, so altered our registration laws that persons proposing to purchase land could be well advised as to the title by a careful inspection of the public records." *Avery, J.,* in *Hughes v. Hodges,* 102 N. C., 237, 240. "An existing, uncanceled mortgage, properly admitted to registration, is constructive notice to subsequent purchasers of the mortgaged premises of the rights of the mortgagee; but a mortgage or deed of trust, properly canceled by a person authorized to cancel it, is notice to no one; it continues no lien upon the property. On the contrary, the entry of satisfaction by the proper person is conclusive of the fact of its discharge and satisfaction. . . . Upon what principle can a subsequent purchaser of property, once covered by a mortgage, but which, long before he deals with it, has been properly canceled and the entry of satisfaction properly entered on the records, be held to a notice of it in his examination of the records to ascertain the then condition of the title of the property he is negotiating to purchase? If at that time it is not an existing charge upon the property (and the entry of satisfaction by the proper person is to him conclusive that it is not), he has absolutely no concern with it; and no statute and no adjudication of any court that we have discovered requires him to observe it, or affects him with constructive notice of its presence on the books, and assuredly none of any equities dehors the deed growing out of a relation once existing, but by the entry of satisfaction, properly made, conclusively determined as to him. It was never contemplated that such a burden should be imposed upon a person negotiating for the purchase of real property that he should examine not only the record of cancellation of all recorded mortgages, but should read them and be

affected with notice of the relationship of mortgagor and mortgagee created by them, and to inquire as to the facts and circumstances and conditions of such relationship." *Manning, J.,* in *Smith v. Fuller,* 152 N. C., 13. In the recent case of *Bank v. Sauls, supra,* the *Chief Justice* said: "The second section of C. S., 2594, requiring cancellation, expressly provides that, if not canceled by the mortgagee or trustee, the mortgage or deed of trust, with the note secured, may be produced, and if marked satisfied, the register of deeds shall mark the instrument canceled. . . . The statute is plain, and in the absence of fraud, participated in by the creditor or purchaser, if the statute is followed, the creditor is protected by the entry of cancellation of the mortgage, which, if made in the manner provided by the statute, is conclusive." See, also, *Lumber Co. v. Hudson,* 153 N. C., 96; *Wood v. Tinsley,* 138 N. C., 508.

We must conclude, therefore, that the Prudential Life Insurance Company and the other contesting defendants are protected by the entry of satisfaction on the margin of the book in the office of the register of deeds as it appeared when the title to the encumbered property was examined, and that they were not required to go behind the record and inquire into the facts, circumstances and conditions under which the entry was made. *Smith v. Fuller, supra.*

The plaintiff takes the additional position that in no event is the nonsuit permissible, because the plaintiff is entitled to a judgment against Walston and Tomlinson for the amount due on the endorsed note, and to a sale of the personal property described in the deed of trust. We think not. The motion for nonsuit was made by the Prudential Company, the Chickamauga Company, P. L. Woodard, S. W. Anderson, H. G. Connor, Jr., trustee, S. J. Calvert, and the Armour Fertilizer Works. We have held that the nonsuit as to these parties was proper, and, upon his Honor's intimation to the same effect at the conclusion of the evidence, the plaintiff submitted to a voluntary nonsuit as to all the defendants. As the ruling of his Honor was correct, the plaintiff is concluded by its voluntary nonsuit as to the defendants, against whom it now claims the right to proceed.

Our disposition of the several questions herein considered makes it unnecessary to discuss the alleged right of some of the defendants to equitable subrogation.

The judgment is

Affirmed.