MILLIKEN & COMPANY, RED SPRINGS PLANT, RED SPRINGS, NORTH CAROLINA 28377 v. DONNA GRIFFIN, POST OFFICE BOX 405, RED SPRINGS, NORTH CAROLINA 28377, S.S. No. 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, AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, POST OFFICE BOX 25903, RALEIGH, NORTH CAROLINA 27611, DOCKET NO. 82(C)05152

No. 8210SC1318

(Filed 20 December 1983)

1. **Master and Servant § 111.1— unemployment compensation—evidence supporting findings by Commission**

The evidence in an unemployment compensation proceeding supported findings by the Employment Security Commission that claimant inquired of her employer as to more suitable work or a reduction of hours; that the employer could not place her in other work because of the position she held and could not shorten her work hours; and that claimant's doctor advised her to change jobs or to switch to a shift not longer than eight hours because of muscle spasms. G.S. 96-4(m); G.S. 96-15(1).

2. **Master and Servant § 108— unemployment compensation—leaving job for health reasons**

A claimant who leaves a job for health reasons has left involuntarily with good cause attributable to the employer and is entitled to unemployment benefits if he meets the three requirements set forth in G.S. 93-13(a).

**3. Master and Servant § 108.2— unemployment compensation—leaving employ-
ment for health reasons—availability for work**

A claimant who left her job which required an 11-hour shift after her doc-
tor advised her not to work longer than an eight-hour shift because of muscle
spasms was "available for work" within the meaning of G.S. 96-13(a)(3).

APPEAL by Milliken & Company from *Hobgood, Judge.* Judg-
ment entered 1 October 1982 in Superior Court, WAKE County.
Heard in the Court of Appeals 15 November 1983.

Milliken & Company appeals from a judgment of the superior
court affirming a decision by the Employment Security Commis-
sion that claimant left her job due to health reasons and therefore
qualifies for unemployment benefits.

*V. Henry Gransee, Jr., Deputy Chief Counsel, for appellee
Employment Security Commission of North Carolina.*

*Thompson, Mann and Hutson, by George J. Oliver and Allan
L. Shackelford, for appellant Milliken & Company.*

*No counsel for appellee Donna Griffin.*

ARNOLD, Judge.

On 26 October 1981 claimant filed a claim for unemployment
benefits with her employer, Milliken & Company. She alleged that
she quit her job as a shift manager on 14 October 1981 because of
physical stress. An adjudicator determined that claimant was not
disqualified for benefits under G.S. 96-14(1). This statute provides
that an individual shall be disqualified if at the time his claim is
filed he is "unemployed because he left work voluntarily without
good cause attributable to the employer." The adjudicator found
that claimant quit work involuntarily due to health reasons.
Milliken appealed.

The matter was then heard before an appeals referee on 8
December 1981. After hearing the testimony of claimant, and the
personnel manager and claimant's department manager at
Milliken, the referee concluded that claimant was not disqualified
for unemployment benefits, because her separation from employ-
ment was involuntary due to health reasons. He based his deci-
sion upon the following findings of fact:

1. Claimant last worked for Milliken & Company on October 14, 1981. From October 18, 1981 until October 31, 1981, claimant has registered for work and continued to report to an employment office of the Commission and has made a claim for benefits in accordance with G.S. 96-15(a).

2. When claimant left the job, the conditions of employment for claimant were as follows: The claimant was a salaried employee as a shift manager on rotating shifts, each shift of eleven hours duration. The claimant on advice of her doctor, inquired of the employer, as to more suitable work or reduction in hours. The employer could not place her in other work because of her position and could not shorten her hours of work.

3. Claimant left the job because her doctor advised that due to her muscular spasms she would have to change jobs or be assigned in her work a shift of not longer than eight hours.

Both the Full Commission and the superior court affirmed the appeal referee's decision. The court found that the findings of fact were based upon competent evidence in the record; and that the law was properly applied to these facts.

[1]  Milliken first argues that the superior court erred in finding that the Commission's findings of fact were based upon competent evidence contained in the record. It specifically argues that the facts do not support the findings that claimant inquired of her employer as to more suitable work or a reduction in hours; that the employer could not place her in other work because of claimant's position, and could not shorten her work hours, and that her doctor advised her to change jobs or switch to a shift not longer than eight hours because of muscular spasms. We are not persuaded by these arguments.

G.S. 96-4(m) provides that when exceptions are taken to the facts found by the Commission and appeal is made to the superior court, the Commission's determination "shall be conclusive and binding as to all questions of fact supported by any competent evidence." G.S. 96-15(i) provides: "In any judicial proceeding under this section the findings of the Commission as to the facts, if there is evidence to support them, and in the absence of fraud,

shall be conclusive, and the jurisdiction of said court shall be confined to questions of law."

Applying this standard of review to the record here, we find that the facts are supported by competent evidence and are therefore conclusive and binding in this Court. The record shows that during the hearing before the appeals referee, the claimant testified that there were no shorter shifts for supervisors. Milliken's personnel manager testified that prior to the date claimant quit, he and claimant had discussed the possibility of a change in claimant's duties. He admitted that on the date claimant quit there was no other alternative for her. As to claimant's health, the record shows that claimant read a statement from her doctor which indicated that she was suffering from muscle strain; that her eleven hour shift was too much for her muscle structure, and that she would be no better until she reduced her work hours or changed her job. Milliken's argument that claimant had to present medical evidence to support her testimony is groundless. There is no statutory requirement for such evidence, and Milliken never requested to see any.

[2] Milliken next argues that the intent of the Employment Security Act is not to award people who leave their employment solely for health reasons; and that the Commission circumvented this intent by allowing claimant to recover benefits. Milliken bases its argument upon the following language in *In re Watson*, 273 N.C. 629, 633, 161 S.E. 2d 1, 5-6 (1968):

It is apparent that the Employment Security Act was not designed to provide the payment of benefits to a person who is physically unable to work or who, for any other personal reason, would at no time be in a position to accept any employment if it were tendered to him, however capable and industrious such person may be . . . . The act does not provide health insurance to the industrious worker stricken by accident or disease. . . . On the other hand, the statute must be construed so as to provide its benefits to one who becomes involuntarily unemployed, who is physically able to work, who is available for work at suitable employment and who, though actively seeking such employment, cannot find it through no fault of his own.

Milliken emphasizes that this language overrules an earlier interpretation of the Act in an opinion by the Attorney General, 27 Biennial Report of the Attorney General of the State of North Carolina 433 (1942-1944). The Attorney General interpreted the phrase, "left work voluntarily without good cause attributable to the Employer," to include a person who has left his employment on account of illness, or other causes beyond his control, when such person upon removal of such causes is available for work but remains unemployed because of inability to find work with his employer or in other suitable employment.

The North Carolina Courts have not directly addressed the issue of whether a person who loses his employment for health reasons has left involuntarily with good cause attributable to the employer. It appears, however, that our courts have implicitly adopted the interpretation of the Act given in the Attorney General's Opinion and that this interpretation is consistent with the policy behind the Act.

In a recent decision this Court was faced with the question of whether a claimant who became ill with diabetes and was no longer able to work for his employer as a long-distance truck driver, or as a local driver because of the long work hours, could recover benefits. *In re George*, 42 N.C. App. 490, 256 S.E. 2d 826 (1979). On appeal from the decision awarding benefits to claimant, the employer did not argue that claimant had left work voluntarily without good cause attributable to employer. The employer, instead, argued that claimant was disqualified because he did not meet the following qualifications set out in G.S. 96-13(a):

(1) He has registered for work at and thereafter has continued to report to an employment office in accordance with such regulations as the Commission may prescribe;

(2) He has made a claim for benefits in accordance with the provisions of G.S. 96-15(a);

(3) He is able to work, and is available for work . . . .

This Court reversed and remanded the decision for failure of the Commission to make findings required by G.S. 96-13(a)(1) and (2). We concluded, however, that there was sufficient evidence that claimant was available for work. The Commission found that the claimant was physically able to perform work not in excess of ten

hours per day which did not require heavy lifting or being away from home overnight. Implicit in this decision is that a claimant who leaves a job for health reasons has left involuntarily with good cause attributable to the employer and is entitled to unemployment benefits as long as he meets the three qualifications in G.S. § 96-13(a).

[3] The Commission in the case on appeal expressly found that claimant had complied with the qualifications in G.S. 96-13(a)(1) and (2). As to subsection (3), the Commission found that because of muscle spasms claimant would have to be assigned to a shift of no more than eight hours. A reduction from eleven hours to eight hours is not such a restriction on the time of work so as to exclude claimant from the work force. She clearly met the qualifications entitling her to unemployment benefits.

This Court also finds no merit to Milliken's argument that the dicta in *In re Watson, supra,* and the interpretation of the Act given in the Attorney General's Opinion are inconsistent. As previously noted, the *Watson* court stated "that the Employment Security Act was not designed to provide the payment of benefits to a person who is physically unable to work or who, for any other personal reason, *would at no time be in a position to accept any employment if it were tendered to him,* however capable and industrious such person may be. (Emphasis supplied.)" *Id.* at 633, 161 S.E. 2d at 5-6. A person who must quit a job for health reasons but who is available for other employment is clearly not a person envisioned by this language. Both reason and justice demand that such a claimant receive unemployment benefits.

The *Watson* court further emphasized that those sections of the Act listing disqualifications for its benefits must be strictly construed in favor of claimants. In awarding benefits to the claimant now before us, the Commission followed this rule.

Milliken would have us follow those jurisdictions which have denied benefits to individuals who became unemployed because of sickness, accident or old age. *See* cases listed in 81 C.J.S. Social Security § 228 (1956). Milliken cites cases from West Virginia and South Carolina as examples of such jurisdictions. *State v. Hix,* 132 W.Va. 516, 54 S.E. 2d 198 (1949) and *Judson Mills v. South Carolina Unemployment Compensation Commission,* 204 S.C. 37, 28 S.E. 2d 535 (1944). *Hix,* however, was overruled in *Gibson v.*

*Rutledge,* --- W.Va. ---, 298 S.E. 2d 137 (1982). We find that the language in the *Mills* decision is in conflict with the policy behind North Carolina's Employment Security Act and application of the Act. The *Mills* court concluded that "involuntary unemployment" under the Act meant unemployment resulting from a failure of industry to provide stable employment; and that unemployment due to changes in personal conditions to the employee, which made it impossible for him to continue his job, was not the type covered by the Act. Our Legislature did not intend such a narrow application of the Act when it declared the following public policy to be accomplished by the Act: "[T]he public good and the general welfare of the citizens of this State require the enactment of this measure . . . for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." G.S. § 96-2.

Affirmed.

Judges HILL and BRASWELL concur.