HELEN C. WRIGHT v. BUS TERMINAL RESTAURANT AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA

No. 837SC1270

(Filed 20 November 1984)

**Master and Servant § 108— unemployment compensation—filing claim for benefits —no voluntary leaving of job**

Where claimant had been told by her supervisor to stay out of work until her attitude could be evaluated by the district manager and that a meeting with the district manager would be scheduled soon, claimant's application for unemployment benefits was not a certification that she was then "unemployed" and did not constitute the voluntary leaving of her job without good cause attributable to her employer so as to disqualify her from receiving such benefits. Rather, plaintiff's job was terminated when the district manager assumed claimant had quit because she had filed the claim and refused to meet with her as scheduled, and this termination of claimant's employment was not attributable to her. G.S. 96-8(10)a; G.S. 96-14(1).

APPEAL by claimant from *Lewis, John B., Jr., Judge.* Judgment entered 18 July 1983 in Superior Court, EDGECOMBE County. Heard in the Court of Appeals 25 September 1984.

In this proceeding for unemployment compensation, it was determined first by an Employment Security Commission Adjudicator and then an Appeals Referee that the claimant was not entitled to benefits because she had voluntarily left her last job without good cause attributable to the employer. Upon further appeal this same determination was made by the Employment Security Commission, whose decision was affirmed by the Judge of Superior Court.

The facts, which are not disputed, are to the following effect: Claimant was employed by respondent Bus Terminal Restaurant in 1974 and worked there regularly thereafter until 4 August

1982. For some time prior to the latter date claimant's immediate supervisor, Ms. Boykins, had been displeased with claimant's attitude and on that day told claimant to take the next week off as vacation and get herself straightened out. Four or five days later claimant asked Ms. Boykins which day she should return to work and was told to stay out without pay until her attitude could be evaluated by the district manager, and that a meeting of the three would be scheduled soon. Twice during the week thereafter claimant again asked Ms. Boykins when she could return to work and was told the district manager would be there on 23 August 1982, but his visit was delayed until 24 August 1982. Meanwhile, on 19 August 1982 claimant asked Ms. Boykins for a layoff slip so she could apply for unemployment benefits, but Ms. Boykins refused to supply one, and the next day claimant applied for unemployment benefits effective 15 August 1982. In completing the application form, which called for information as to why she no longer worked for her most recent employer, claimant stated the foregoing circumstances. Before the scheduled meeting with the district manager he received the notice of the claim and, concluding therefrom that claimant had thereby voluntarily terminated her employment, cancelled the meeting.

In addition to finding the foregoing as facts, the Commission also found that claimant was under suspension for disciplinary reasons when she applied for benefits. And from the facts so found, the Commission concluded as a matter of law that the claimant left her job voluntarily by filing for benefits and was thus disqualified to receive them under express provisions of the Employment Security Law.

*Eastern Carolina Legal Services, Inc., by Wesley Abney, for claimant appellant.*

*No brief filed by respondent appellee Bus Terminal Restaurant.*

*Thelma M. Hill and V. Henry Gransee, Jr. for respondent appellee Employment Security Commission of North Carolina.*

PHILLIPS, Judge.

Since the facts found by the Commission are not contested, the only question presented by this appeal is whether they sup-

port the conclusion that claimant left her job voluntarily without good cause attributable to the employer. G.S. 96-14(1); *Intercraft Industries Corp. v. Morrison*, 305 N.C. 373, 289 S.E. 2d 357 (1982). If so, she is disqualified from receiving benefits and the Judge's affirmance of the Commission's decision is correct. But in our opinion the facts found by the Commission do not support the legal conclusion made and this matter is remanded to the Employment Security Commission for further proceedings in accord with the applicable law.

In progressing toward its ultimate decision, the Commission correctly noted that unless claimant was "unemployed," as that word is defined by one of the provisions of G.S. 96-8(10)a, she was not entitled to benefits under our Employment Security Law. From that base, however, instead of analyzing the evidence and determining if it showed that the claimant was unemployed within the purview of the law, and if so when and how she became so, the Commission erroneously deduced that the Employment Security Law requires claimants to be unemployed and concluded therefrom that she was unemployed by virtue of having filed the claim. As a basis for so ruling, the Commission fallaciously declared that any person who files "a new initial claim for unemployment insurance benefits" in this state, as claimant did on 20 August 1982, "is certifying to the Commission that she considers herself unemployed within the meaning of the law." While G.S. 96-8(10)a does require a claimant to be "unemployed" as statutorily defined before *receiving* benefits, neither this statute nor any other in the Employment Security Law requires one to be unemployed before filing a claim or makes filing a claim determinative of the fact of unemployment. Under the law facts such as unemployment and its cause are determined by evidence, rather than statutory implication, and nothing in the evidence or findings of fact indicates that claimant either considered herself to be or was in fact unemployed within the meaning of the law on 20 August 1982. The form supplied by the Commission that she filled out that day instructed her that "The following information is needed to determine your eligibility for unemployment insurance . . . give complete details about why you no longer work for your most recent employer." In response thereto claimant accurately described her suspension and the only certification that she made was that the facts stated were true to the best of her knowledge

and belief. Having done that and filed the claim with the Commission, determining whether she was "unemployed" as statutorily defined and the claim met the requirements of law was no task of hers. That was the duty of the Employment Security Commission and the Commission had no right to shift it to her. With respect to each claim filed, G.S. 96-15(b)(1) provides in pertinent part, "A representative designated by the Commission shall promptly examine the claim and shall determine whether or not the claim is valid." Nevertheless, having erroneously burdened claimant with the duty of interpreting the law that applied to her claim and having fallaciously imputed to her a certification that her employment had been terminated, the Commission further concluded that since she had not been fired she must have quit her job voluntarily, and was thus disqualified from receiving benefits under the terms of G.S. 96-14(1).

But the evidence and findings of fact show that when the claim was filed she had not quit her job and continued out of work thereafter, not by any voluntary act of hers, but because of the employer's misinterpretation of her claim and the law that applies to it. At the time the claim was filed all concerned recognized and understood that her employment had not been terminated, and were awaiting a meeting to discuss her suspension, and even after the meeting was cancelled claimant kept trying to arrange another one. The only thing in the record that even suggests that claimant had quit her job is the Commission's finding that the district manager "was of the opinion that by filing such claim claimant intended to terminate her employment." But, of course, what the district manager thought is not evidence of what the claimant intended.

Obviously, then, on 20 August 1982 claimant was not "unemployed" as that word is statutorily defined. Her employment had not been terminated; it was just in abeyance pending a scheduled meeting with the district manager to rule on her suspension. But that she was not "unemployed" on 20 August 1982 does not dispose of her claim and require an affirmance of the judgment appealed from; because the record also shows that she became unemployed four days later when the district manager, misinterpreting her intentions and claim, refused to meet with her as scheduled. Under the circumstances, this refusal to discuss her suspension was, in effect, a termination of her employ-

ment without cause or an involuntary discharge, and the commission should have so concluded. The termination, and it cannot be considered otherwise, since her suspension necessarily ended when the employer stopped considering her return to work, certainly cannot be attributed to her. She was willing and able to return to work, tried her best to do so, and went to the Employment Security office to have her rights determined only after she had been involuntarily out of work for more than two weeks. An employee has not left her job voluntarily when events beyond the employee's control cause the termination. *Eason v. Gould, Inc.,* 66 N.C. App. 260, 311 S.E. 2d 372 (1984).

Nor can claimant's discharge be attributed to misconduct on her part, though the Commission contingently concluded that if the separation had been considered a discharge her misconduct was established by the evidence. This conclusion is likewise without support in the findings of fact and evidence. What the findings of fact and evidence establish is that the sole reason for claimant's termination was the employer's unwarranted assumption that she had quit because she filed a claim. The Commission's gratuitous conclusion that a discharge for cause was either justified or contemplated is contradicted by the employer's sole witness, Ms. Boykins, who testified:

> That's what it all boiled down to, and I think if she hadn't come in here and filed for unemployment, and we hadn't got that card on her, that letter from you all on Saturday, I think he would have put her back to work, because we had no intentions of firing her.

> *      *      *

> I think more or less he would have put her back to work, if she hadn't of filed for unemployment, so he took it for granted that she had quit.

Though claimant has the burden of showing that she is entitled to benefits under the Employment Security Law, the disqualifying provisions of G.S. 96-14 must be strictly construed, since the main purpose of the law is to benefit eligible workers. It must also be construed, so our Supreme Court has said, to authorize benefits "to one who becomes involuntarily unemployed, who is physically able to work, who is available for work at suitable

Lindley Chemical, Inc. v. Hartford Acci. and Indemn. Co.

employment and who, though actively seeking such employment, cannot find it through no fault of his own." *In re Watson*, 273 N.C. 629, 633, 161 S.E. 2d 1, 6 (1968). The record indisputably establishes that claimant met each  these conditions except the last one, which the Commission did not address because of its erroneous conclusion that claimant had quit her job by filing a claim. If, upon remand, claimant can show that after the employer terminated her employment she sought other work, as required by G.S. 96-13(a), and was not successful through no fault of her own, she should be awarded the benefits that the law authorizes.

The judgment affirming the decision of the Commission is therefore vacated and this matter is remanded to the Employment Security Commission for further proceedings in accord with applicable provisions of the Employment Security Law and this opinion.

Vacated and remanded.

Judges HEDRICK and BECTON concur.