EMMA D. HOKE v. BRINLAW MANUFACTURING COMPANY AND EMPLOY-
MENT SECURITY COMMISSION OF NORTH CAROLINA

No. 8427SC581

(Filed 19 March 1985)

1. **Master and Servant § 108— unemployment compensation—leaving work because of health problem**

    Evidence of a health problem and of medical advice to leave work or change a job because of that problem is ordinarily sufficient to establish the existence of adequate health reasons for leaving the job.

2. **Master and Servant § 108— unemployment compensation—leaving job for health reasons—insufficient findings to support conclusion**

    The Employment Security Commission's conclusion that claimant left work voluntarily without good cause attributable to her employer and was thus disqualified from receiving unemployment compensation benefits was unsupported by the findings where the evidence was insufficient to support findings as to whether claimant had received medical advice that her high blood pressure was aggravated by conditions on her job and that she should seek a change and as to whether claimant took the necessary minimal steps to preserve her employment, such as requesting a leave of absence. Therefore, the cause must be remanded to the Employment Security Commission for proper findings of fact.

3. **Master and Servant § 108— unemployment compensation—pro se claimant—failure of appeals referee to ask relevant questions**

    It is inappropriate for the Employment Security Commission to disqualify a pro se claimant from receiving unemployment benefits because she failed to produce evidence of facts that case law from other states says she must establish when the appeals referee never asked her the relevant questions.

4. **Master and Servant § 108— unemployment compensation—leaving work for health reasons—reasonable person standard**

    In unemployment compensation cases involving an involuntary leaving of work for health reasons, the claimant's actions should be assessed in light of the reasonable person standard.

APPEAL by claimant from *Gaines, Judge.* Judgment entered 12 April 1984 in Superior Court, GASTON County. Heard in the Court of Appeals 5 February 1985.

This is an appeal from an order affirming the Employment Security Commission's denial of claimant's claim for unemployment insurance benefits. The record discloses the following:

Claimant was employed by Brinlaw Manufacturing Company (Brinlaw) as a presser in April of 1981. In May of 1983, she left her job and, on 2 October 1983, filed a claim for unemployment insurance benefits. Her claim was denied by a claims adjudicator based on the adjudicator's determination that Ms. Hoke's stated reason for leaving work, high blood pressure, did not constitute good cause attributable to her employer. The adjudicator noted that claimant presented no evidence of medical advice to leave work. Claimant appealed.

After an evidentiary hearing attended only by claimant, an appeals referee found claimant disqualified from receiving benefits because she had not shown that her leaving was with good cause attributable to her employer. This determination was appealed to the Commission. Affirming the decision of the referee, the deputy commissioner made the following findings of fact:

2. The claimant quit this job because she felt that the heat and steam emitted by the machine she operated at work adversely affected her health. Claimant was employed as a presser. This job required her to work in close proximity to steamboards. Such boards emit a substantial amount of heat. Claimant felt the excessive heat made her faint and dizzy.

3. The claimant suffers from high blood pressure. She had consulted a physician concerning this condition, but apparently had not been advised as to any restrictions on her ability to work in her regular job.

4. The claimant made the employer aware that working near the steamboards caused her to feel ill. The claimant had asked to be transferred from first shift to second shift but her request was denied. The employer did not operate steamboards on the second shift. It is not known whether a leave of absence was available for the claimant, or whether one was requested.

5. When the claimant left the job, continuing work was available for the claimant there.

On appeal to the superior court, the Commission's decision was affirmed. Claimant appealed to this court.

*Legal Services of Southern Piedmont, Inc. by Pamela A. Hunter, for claimant-appellant.*

*No counsel for appellee Brinlaw Manufacturing Company.*

*Donald R. Teeter for appellee Employment Security Commission.*

EAGLES, Judge.

I

With respect to appeals from decisions of the Employment Security Commission, our law provides, "In any judicial proceeding under this section, the findings of the commission as to the facts, if there is evidence to support them and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law." G.S. 96-15(i) (Cum. Supp. 1983). *Accord., In re Steelman,* 219 N.C. 306, 13 S.E. 2d 544 (1941); *In re Huggins v. Precision Concrete Forming,* 70 N.C. App. 571, 320 S.E. 2d 416 (1984).

Claimant's first three assignments of error raise the question of whether the superior court correctly concluded that the evidence of record here supports the Commission's findings of fact and whether the findings support the conclusions of law and the Commission's decision that claimant is disqualified from receiving unemployment insurance benefits. Claimant contends that the evidence does not support certain of the Commission's findings and that the findings do not support the legal conclusions. We agree.

Claimant was not discharged from Brinlaw. The question before the Commission was whether the claimant left work voluntarily without good cause attributable to the employer. The basis of claimant's argument is that her leaving work was not voluntary but was caused by problems related to her high blood pressure which prevented her from continuing to work at her job as a presser.

As recently noted by Judge Arnold in *Milliken Co. v. Griffin*, 65 N.C. App. 492, 309 S.E. 2d 733 (1983), *rev. denied* 311 N.C. 402, 319 S.E. 2d 272 (1984) (filed 20 days after the decision of the appeals referee was mailed from the Commission), our courts have not addressed directly the question of whether a person who leaves work for health reasons has left involuntarily with good cause attributable to the employer. Relying on *In re George*, 42 N.C. App. 490, 256 S.E. 2d 826 (1979), the *Milliken* court said that "a claimant who leaves a job for health reasons has left involuntarily with good cause attributable to the employer as long as he meets the three qualifications in G.S. Section 96-13(a)." 65 N.C. App. at 497, 309 S.E. 2d at 736.

In order to meet the qualifications of G.S. 96-13(a), a claimant must show that he or she has (1) registered for work and continued to report to an employment office as prescribed by Commission regulations; (2) made a claim for benefits; and (3) is able and available for work within the meaning of the law. The threshold question, however, is whether the claimant has established that his leaving his employment was involuntary due to health reasons. In its "Memorandum of Law," the Commission notes that in order to carry this burden,

[A] claimant must (1) introduce competent testimony that at the time of leaving adequate health reasons existed to justify the leaving, (2) inform the employer of the health problem, (3) specifically request the employer to transfer him to a more suitable position, and (4) take the necessary minimal steps to preserve his employment such as requesting a leave of absence if appropriate and available.

[1] The Commission concluded that the "claimant has failed to meet her burden of proving either the 1st or 4th requirements." As to the first, the Commission specifically concluded that claimant presented insufficient medical evidence that the conditions on her job aggravated her high blood pressure or caused the dizziness and faintness that she complained of. Though it has not been unequivocally stated, evidence of a health problem and of medical advice to leave work or change a job because of that problem is ordinarily sufficient to establish the existence of adequate health reasons. *See Milliken Co. v. Griffin, supra* (claimant read statement from her doctor advising her to change jobs or

work shorter shifts). Claimant here presented undisputed evidence by her own sworn testimony that she had high blood pressure and had several times become ill while at work. She testified that her high blood pressure was aggravated by conditions on her job which caused her to experience dizziness and fainting. There was no evidence that claimant's physician had told her that her high blood pressure was aggravated by conditions on her job or that he had advised her to seek a change.

[2]  The Commission's conclusion was based at least in part on the finding that claimant "*apparently* had not been advised of any restrictions on her ability to work in her regular job." (Emphasis added.) This finding was in turn based on the following exchange between the Commission's appeals referee (Q) and the claimant (A) at the appeals hearing:

Q: Were you going to a doctor about your blood pressure?

A: Sure have. I take blood pressure pills every day.

Q: What doctor do you go to?

A: Doctor Coffield.

Q: Had he told you anything about your job, what you should do about you [sic] job?

A: No, cause the last time I went to him, my blood pressure had never been stable, after I threatened this stroke. I went down to the emergency room cause it happened and I kept feeling bad that Friday when I got off of work and that Saturday I layed around. I thought it was just a slight headache and I got up that Sunday morning and I couldn't hardly see. So I went down to the emergency room and they kept me down there for about pretty close to almost 2 hours and the doctor told me I'd have to sign a form to make sure I go to my, you know, family doctor on account of it was serious, my blood pressure had run up, it was 200 and something.

The Commission argues that the record is "quite clear" that claimant had not consulted her physician on her dizziness at work and that, in response to the appeals referee's question whether her doctor had advised her about work, "claimant directly

answered no." Considering the pivotal significance attached by the Commission to the question of whether claimant had been advised to leave work or change jobs, we cannot agree that the record is either "clear" or "direct" with regard to claimant's medical treatment or any physician's advice. Rather, we agree with claimant that the referee's questions were vague and that the *pro se* claimant's answers were unresponsive. In our view, the evidence here does not support a finding either way on the question of whether claimant had received medical advice. The inconclusive nature of the evidence on this issue is reflected in the Commission's indefinite finding. Though it appears that it may have had pivotal significance for the Commission, we cannot determine the importance or weight attached by the Commission to this indefinite finding or the evidence, or lack of it, on which the finding is based. Insofar as it is based on this finding, the Commission's conclusion that claimant presented inadequate health reasons to justify her leaving is error.

The Commission also notes that claimant failed to meet the fourth requirement of taking "the necessary minimal steps to preserve his employment such as requesting a leave of absence if appropriate and available." This conclusion is based in part on the finding, "It is not known whether a leave of absence was available for the claimant, or whether one was requested." This finding, while correct, suffers from the same legal deficiency already discussed: there is simply no evidence on which a finding could be made either way. Moreover, the wording of the fourth requirement indicates that requesting a leave of absence is only one example of a "necessary minimal step," not an absolute prerequisite. The Commission's finding does not lead inescapably to the conclusion that the claimant did not take the necessary minimal steps to preserve her employment and it does not, without more, support that conclusion. Mindful that it is not our role to find the facts; nevertheless, we note that the record is replete with evidence of claimant's unsuccessful attempts to "work with" her supervisor in an attempt to keep her job. We note also that the appeals referee never asked claimant whether a leave of absence was available to her or whether she requested one.

[3] We agree with the Commission that a claimant in an appeals hearing has the burden of proving that he is not disqualified from receiving unemployment insurance benefits. Similarly, the Com-

mission is not required to notify a claimant of the specific facts that he will be required to establish or to prove the claimant's case for him. However, the Commission does have the responsibility to conduct its hearings in a manner that allows a party the opportunity to make the required showing. Especially in the case of an uncounseled claimant, the Commission's responsibility involves asking the right questions. We do not think it is appropriate for the Commission to disqualify a *pro se* claimant from receiving benefits because she failed to produce evidence of facts that case law from other states says she must establish when the appeals referee never even asked her the relevant questions. We hold that the Commission's conclusion that claimant failed to show that she took necessary minimal steps to preserve her employment is erroneous.

Our research has disclosed no North Carolina case or statute that sets forth what a claimant must show in' order to establish the threshold proposition that a leaving of employment was involuntary due to health reasons. We do not perceive the four requirements, quoted from the Commission's "Memorandum of Law," to be, when fairly applied, unduly burdensome on a claimant, especially in view of the holding in *Milliken* that a claimant's testimony regarding medical advice need not be substantiated by a doctor's sworn testimony or affidavit.

[4] Emphasizing strongly that each case must be decided on its own peculiar facts, we believe that one or more of the four requirements should be applied in most cases involving an involuntary leaving for health reasons, depending on the facts. Even so, in every case, the claimant's actions should be assessed in light of the reasonable person standard. In appropriate cases, the application of these requirements will effect the policy balance referred to in *In re Watson*, 273 N.C. 629, 161 S.E. 2d 1, 35 A.L.R. 3d 1114 (1968): i.e., that claimants should be compensated when their unemployment is occasioned through no fault of their own, but unemployment insurance should not be treated as a substitute for disability pay or health insurance.

We reverse the order of the superior court and remand this cause with directions that it be remanded to the Employment Security Commission for proper findings of fact and, if necessary, an additional evidentiary hearing.

Reversed and remanded.

Judges ARNOLD and PARKER concur.