ROXIE M. RAY, PETITIONER-APPELLANT v. BROYHILL FURNITURE INDUSTRIES AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, RESPONDENT-APPELLEES

No. 8524SC1169

(Filed 1 July 1986)

1. **Master and Servant § 108— unemployment compensation—leaving work for health reasons—"Pennsylvania test"—burden of proof**

   The Employment Security Commission erred in requiring claimant to meet all four parts of the "Pennsylvania test" in order to obtain unemployment compensation after leaving her employment for health reasons and in placing upon claimant an improper burden of proof for some of those parts. N.C.G.S. § 96-14(1) (1981).

2. **Master and Servant § 108— unemployment compensation—existence of health condition—burden of proof**

   Claimant had only to show by competent evidence that a health condition existed at the time she left her employment, and the Employment Security Commission erred in requiring claimant to produce a physician's note on or before the date she left her employment. Plaintiff met her burden of proving her health condition by her own testimony that her doctor had advised her before she left her employment that she should not be working around chemicals and fumes and by a note from her physician dated six weeks after she left her employment.

3. **Master and Servant § 108— unemployment compensation—informing employer of health condition**

   The Employment Security Commission erred in finding that claimant failed to inform her employer of her health problem or to request a transfer to a more suitable position where claimant's uncontradicted testimony showed that she informed her immediate supervisor of her health problem and requested a transfer to another department, and that the supervisor took no action on her request and threatened to fire her if she went to the plant manager.

Ray v. Broyhill Furniture Industries

4. **Master and Servant § 108— unemployment compensation—minimal steps to preserve employment**

   Claimant took the necessary minimal steps to preserve her employment where she sought the advice and care of a physician, and she informed her immediate supervisor of her health problems, asked for a protective mask, and requested a transfer to another department.

5. **Master and Servant § 108— unemployment compensation—leaving work for health reasons—good cause attributable to employer**

   Claimant left work with good cause attributable to her employer and thus was entitled to unemployment benefits where claimant's asthma and bronchitis condition was exacerbated by her exposure to chemical sprays, lacquers and fumes in her employment, and claimant's immediate supervisor failed to act on her request for a transfer to another department and threatened to fire her if she went to the plant manager.

APPEAL by petitioner from *Lewis (Robert D.), Judge.* Order entered 10 June 1985 in Superior Court, WATAUGA County. Heard in the Court of Appeals 14 February 1986.

*Legal Services of the Blue Ridge, Inc., by Robert W. Lehrer, for petitioner appellant.*

*Employment Security Commission of North Carolina, by C. Coleman Billingsley, Jr., for respondent appellee.*

BECTON, Judge.

The claimant appellant, Roxie M. Ray, was employed by Broyhill Furniture Industries (Broyhill) in Lenoir, North Carolina, for five years and four months before resigning for health reasons on 21 December 1984. Her claim for unemployment benefits was denied because the claims adjudicator found that she had voluntarily quit her employment without good cause attributable to her employer. The decision to deny benefits having been upheld by the appeals referee, the Employment Security Commission, and the Superior Court, Ms. Ray appeals to this Court. We reverse and remand.

I

Ms. Ray worked in the finishing department, and her job was to wipe glaze off the furniture after it had been sprayed. She was constantly exposed to chemical sprays, lacquers and fumes. The company did not provide workers with any kind of protective mask to minimize the harmful effects of exposure to these chemi-

cals and fumes. They did provide fans in the glaze department, which Ms. Ray testified "would just more or less pick that stuff up and just blow it around, and it would, you could just blow it out of your nose, just handful [sic] of it. You would cough it up, you could just take your hand and rub it over your hair and your hands would just be glazed. . . ."

Ms. Ray testified that she was told by her doctor that she would get no relief from her aggravated bronchitis and asthma conditions as long as she was exposed to the chemicals and fumes. He suggested that she request a protective mask and that she seek a transfer to another department. Ms. Ray brought both of these requests to Jimmy Stewart, her immediate supervisor, but no action was ever taken on either of them. In fact, when Ms. Ray got no satisfaction from Mr. Stewart on the transfer request, she expressed an intention to go to the plant manager. According to Ms. Ray, Mr. Stewart threatened to fire her if she went over his head.

Ms. Ray gave one week's notice and left Broyhill on 21 December 1984. Ms. Ray testified that she would have continued to work for Broyhill if she could have been transferred from the finishing room to another department.

II

Introduction

Ms. Ray contends that the superior court erred in upholding the Commission's conclusion that she voluntarily quit her job without good cause attributable to her employer because the Commission improperly applied the law to the facts of her case. We agree.

Under N.C. Gen. Stat. Sec. 96-14(1) (1981), the statute in effect at the time that Ms. Ray applied for benefits, a claimant would be disqualified from receiving benefits if she: (1) left work voluntarily (2) without good cause attributable to the employer. If a claimant *either* left work involuntarily *or* with good cause attributable to the employer, she could collect benefits. *Eason v. Gould, Inc.*, 66 N.C. App. 260, 311 S.E. 2d 372 (1984), *affirmed*, 312 N.C. 618, 324 S.E. 2d 223 (1985). Sections of the Employment Security Act which impose disqualifications from receiving benefits should be strictly construed in favor of claimants. *In re Watson*,

273 N.C. 629, 161 S.E. 2d 1 (1968). However, the burden is on the claimant to prove that she is not disqualified under the Act. *Huggins v. Precision Concrete Forming*, 70 N.C. App. 571, 320 S.E. 2d 416 (1984).

We conclude that Ms. Ray has established *both* that her resignation was involuntary due to compelling health reasons *and* that she had good cause attributable to her employer to leave.

A. *Leaving Work "Involuntarily," and the "Pennsylvania Test"*

First, we address the issue of voluntariness. An employee has not left her job voluntarily when events beyond her control or the wishes of the employer cause the termination. *Eason*, 66 N.C. App. at 262, 311 S.E. 2d at 373. In addition, an employee need not continue employment which is injurious to her health. In many cases, resigning under such circumstances is an involuntary quit, entitling a claimant to benefits. *See generally Milliken & Co. v. Griffin*, 65 N.C. App. 492, 309 S.E. 2d 733 (1983), *disc. rev. denied*, 311 N.C. 402, 319 S.E. 2d 272 (1984) (A claimant who leaves a job for health reasons has left involuntarily with good cause attributable to the employer and is entitled to benefits as long as other statutory requirements are met.).

Ms. Ray had the burden of showing that her resignation was involuntary due to her health condition. However, the Commission required Ms. Ray to satisfy all four parts of the so-called "Pennsylvania test," requiring the claimant to (1) introduce competent testimony that at the time of leaving adequate health reasons existed to justify the leaving, (2) inform the employer of the health problems, (3) specifically request the employer to transfer her to a more suitable position, and (4) take the necessary minimal steps to preserve her employment such as requesting a leave of absence if appropriate and available. *See Deiss v. Unemployment Compensation Board of Review*, 475 Pa. 547, 381 A. 2d 132 (1977).

North Carolina courts have refused to hold that every claimant must prove all four parts of this test in order to survive disqualification. *See Hoke v. Brinlaw Mfg. Co.*, 73 N.C. App. 553, 327 S.E. 2d 254 (1985). In fact, at the time Ms. Ray's case was decided by the Commission, there was no North Carolina case or statute

that set forth what a claimant had to show in order to establish the threshold proposition that leaving employment was involuntary due to health reasons. *See Hoke*, 73 N.C. App. at 559, 327 S.E. 2d at 258 (The new "North Carolina test" is contained in N.C. Gen. Stat. Sec. 96-14(1)(a) and (b) (1985).).

The *Hoke* Court came closest to issuing such a prescription when it held that, *depending on the facts, one or more* of the four requirements should be applied *in most cases* involving a voluntary leaving due to health reasons. *Id.* (Emphasis added.) Applying this standard, we hold that Ms. Ray has met her burden of showing that she should not be disqualified.

B. *The Sufficiency of Claimant's Evidence*

[1, 2] The Commission erred by requiring Ms. Ray to meet all four parts of the "Pennsylvania test" and by increasing her burden of proving some of those parts even beyond that which the Pennsylvania courts require. For example, the Commission found that Ms. Ray "did not present any *competent writing from her physician* to her employer *at the time she quit*." (Emphasis added.) This implies that a claimant must produce a physician's note on or before the day she leaves. Neither the "Pennsylvania test" nor the new North Carolina statute requires as much. Rather, the claimant must only show by *competent evidence* that the health condition *existed* at the time of the leaving. Competent evidence may include the physician's statement or testimony, but does not exclude any other evidence tending to prove the existence of claimant's health condition. *See Milliken*, 65 N.C. App. at 495, 309 S.E. 2d at 735. Ms. Ray's testimony about her condition, which was corroborated by the physician's note, was competent evidence. The employer offered no contradictory evidence. Ms. Ray has met her burden on part one.

Defendant makes much of the fact that Ms. Ray's doctor's note was dated 7 February 1985, some six weeks after she left Broyhill. This, they say, did not prove that she had left work due to a health condition which existed at the time of her leaving. Since the Commission erroneously believed that a contemporaneous, written physician's note was the *only* competent evidence which would establish a health condition at the time of the leaving, it disregarded Ms. Ray's testimony and looked instead to the technical, probative value of the 7 February 1985 note.

Ms. Ray testified that Dr. Cline had advised her before she left Broyhill in December of 1984 that she should not be working around the chemicals and fumes. This was competent evidence. The note corroborated her testimony. The fact that the note was written in the present rather than in the past tense ("needs to be away from dust, fumes, and smoke due to medical problems") does not render it incompetent, even though the note might have been better evidence had it contained a more time-specific prohibition.

C. *Notifying the Employer of the Health Problem*

[3] The Commission also erred in finding that Ms. Ray failed to inform the employer of the health problem. Since no witnesses testified on behalf of the employer, there is no evidence of the personnel policy, standard procedure, or decision-making structure at Broyhill. Yet, the Commission chose to speculate as to what Ms. Ray *could have done* to preserve her claim. The Commission stated: "Except for her supervisor, she did not inform anyone in authority. She could have gone to the personnel department or the plant manager and did not do so."

Again, neither the "Pennsylvania test" nor the new North Carolina statute requires as much. All that was required of Ms. Ray under the "Pennsylvania test" was that she inform the employer of the health problem or specifically request a transfer to a more suitable position, both of which she did. Under the new North Carolina statute, Ms. Ray would need only to have given the employer notice of the health condition at a reasonable time prior to leaving, and *be available* for other alternative work offered by the employer, requirements which she also satisfied. *See* G.S. Sec. 96-14(1)(b); *Milliken,* 65 N.C. App. at 497, 309 S.E. 2d at 737.

The Commission took the position that Ms. Ray's supervisor was not the "employer" within the meaning of the "Pennsylvania test." We disagree. Ms. Ray testified that not only did her supervisor, Mr. Stewart, refuse to take action on her requests for transfer, and in fact told her that he doubted she could get one, he also threatened to fire her if she went to the plant manager. Certainly, if Mr. Stewart had the power to fire Ms. Ray, he was at least in a position to stand in the shoes of the employer for purposes of taking notice of the employee's health condition and transfer request. That he chose to ignore and threaten Ms. Ray

should not operate to increase *her* burden of preserving her claim.

Speculation as to what Ms. Ray *could have done* is irrelevant. The issue is not whether she presented an ironclad case to the Commission, but rather whether she met the burden of showing that she constructively informed the employer or requested a transfer. Again, because Broyhill offered no evidence and the only evidence on this issue was Ms. Ray's testimony, the Commission erred in finding that she did not inform anyone in authority.

D. *Taking the "Necessary Minimal Steps"*

[4] Finally, the Commission found that Ms. Ray's "failure to take the necessary minimal steps in order to seek a transfer or otherwise protect her employment requires a disqualification period [sic]." The Commission did not specify what those "necessary minimal steps" would have been, but it is apparent that the Commission felt Ms. Ray should have gone to the plant and/or personnel manager and perhaps even that she should have asked for a leave of absence, even though she testified that a leave of absence would have given her only temporary relief, such as her vacation the previous July had done. We have already found that by going to her immediate supervisor, Ms. Ray gave at least constructive notice to her employer of her condition and desire for a transfer. This, together with asking for a protective mask and seeking the care and advice of a physician, is enough to meet the burden of showing that she took the "necessary minimal steps" to preserve her employment.

E. *Leaving Work with "Good Cause"*

[5] Even assuming, *arguendo*, that Ms. Ray did not establish that she left work involuntarily, we believe that she should have been allowed benefits on the ground that she left with good cause attributable to her employer. "Good cause" is that which "would be deemed by reasonable men and women valid and not indicative of an unwillingness to work." *Watson*, 273 N.C. at 635, 161 S.E. 2d at 7. Cause "attributable to the employer" is one which is "produced, caused, created or as a result of actions by the employer." *In re Vinson*, 42 N.C. App. 28, 31, 255 S.E. 2d 644, 646 (1979).

We believe that this also includes *inaction* by the employer. Broyhill's inaction placed Ms. Ray in the untenable position of

having to choose between leaving her job and becoming unemployed or remaining in a job which exposed her, without even minimal protection, to harmful chemicals and fumes that exacerbated her asthma and bronchitis conditions. Thus, Ms. Ray's cause was attributable both to the employer's action (Mr. Stewart's threat to fire her if she went over his head) and inaction (Mr. Stewart's failure to put in her transfer request).

The Employment Security Act was passed for "[t]he public good and the general welfare of the citizens of this State . . . for the benefit of persons unemployed through no fault of their own." N.C. Gen. Stat. Sec. 96-2 (1985). The Act does not contemplate penalizing workers who choose in favor of their own health, safety or ethical standards and against an affirmative or *de facto* policy of the employer to the contrary. *See, e.g., In re Clark*, 47 N.C. App. 163, 266 S.E. 2d 854 (1980) (claimant left because actions employer required her to take violated ethical standards of her profession.).

Conclusion

We hold that the Commission erred in disqualifying Ms. Ray from receiving benefits by applying an improper legal standard *and* by disregarding or misapplying the only competent evidence offered to meet that stringent and inflated burden. The Commission's findings of fact disregarded much of the competent evidence and its conclusions of law were based on an erroneous interpretation of relevant precedent. *See Eason*, 66 N.C. App. at 261, 311 S.E. 2d at 373 (Commission's conclusions of law may be fully reviewed on appeal).

The judgment of the Superior Court is reversed, and the cause is remanded to the Commission for entry of an award of benefits.

Reversed and remanded.

Judges JOHNSON and MARTIN concur.