BERNICE WATSON, Petitioner-Appellant v. EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA and THE PLASTIC FORMER COMPANY, Respondents-Appellees

No. 9226SC826

(Filed 3 August 1993)

**Labor and Employment § 152 (NCI4th) — unemployment benefits — plant moved by employer — no transportation for employee — leaving job for cause attributable to employer**

The Employment Security Commission erred in disqualifying petitioner from receiving unemployment benefits where petitioner left her job after her employer moved its plant from Charlotte to Mooresville because she had no reliable means of transportation to work every day of the week, even though she had attempted to make a series of arrangements to get to work; when petitioner became aware that her employer was moving its plant, she expressed reservations about her ability to maintain reliable transportation to work, but, due to her supervisor's encouragement, she continued to work for a period of time even after the plant moved; and petitioner should not be penalized merely because she attempted to

continue working after her employer moved the plant to another city.

**Am Jur 2d, Unemployment Compensation § 105.**

Appeal by petitioner from judgment entered 19 May 1992 by Judge Claude S. Sitton in Mecklenburg County Superior Court. Heard in the Court of Appeals 16 June 1993.

Petitioner terminated her employment with The Plastic Former Company on 19 September 1991 and filed a claim for unemployment insurance benefits. Her claim was denied by a claims adjudicator, an appeals referee, and by the Employment Security Commission, on the grounds that the petitioner had left work without good cause attributable to the employer. Upon appeal by the petitioner to the Superior Court of Mecklenburg County, the decision of the Employment Security Commission was affirmed. Petitioner appeals to this Court.

*Legal Services of Southern Piedmont, Inc., by Linda S. Johnson, for petitioner-appellant.*

*T. S. Whitaker, Chief Counsel, and James A. Haney, Staff Attorney for defendant-appellee Employment Security Commission of North Carolina.*

MARTIN, Judge.

The sole question for determination is whether petitioner is disqualified from receiving unemployment benefits on the ground that she left work without good cause attributable to her employer. We conclude that she is not and reverse the denial of her claim for benefits.

In its Decision denying petitioner's claim, The Employment Security Commission found the following pertinent facts:

2. The claimant last worked for The Plastic Former Company on September 19, 1991. The claimant was employed as a packer and had been employed since March 21, 1989.

3. The claimant left this job. When the claimant left the job, continuing work was available for the claimant with the employer.

4. The claimant left this job because she did not have a reliable means of transportation to work.

5. The employer moved from it [sic] location on Wilkinson Boulevard in Charlotte to Mooresville around November or December, 1990.

6. Before the move, the claimant had expressed reservations about her ability to maintain reliable transportation to and from work. Due to Mr. Haywood's [petitioner's supervisor] encouragement, she decided that she would continue working.

7. Mr. Haywood was available to take the claimant to work on Monday and Tuesday. The claimant worked Monday through Thursday, and he had taken her to work on past occasions.

8. The claimant's car broke down after the employer moved its plant. She made a series of different arrangements to get to work. Immediately prior to leaving her job, she was riding to work in a truck owned by a co-worker. On September 19, 1991, the truck was in disrepair, causing the claimant and the co-worker to arrive at work at approximately 8:15 a.m., fifteen minutes after the scheduled beginning of the shift. Both the claimant and the co-worker were sent home as a penalty for arriving late. The claimant had been tardy several times before, and was aware of this penalty as it had been waived twice before.

9. Believing the co-worker's truck to be beyond immediate repair, and having no other foreseeable means of transportation to work every day of the week, the claimant announced she was quitting. The co-worker was out of work ten days, but returned to work when his vehicle was repaired.

Petitioner did not except to the Commission's findings; they are therefore presumed to be supported by the evidence and are binding on appeal. *Beaver v. Paint Co.*, 240 N.C. 328, 330, 82 S.E.2d 113, 114 (1954). Based on its findings, the Commission concluded "that the claimant's leaving was without good cause attributable to the employer." The Commission's conclusions of law are fully reviewable. *Eason v. Gould, Inc.*, 66 N.C. App. 260, 311 S.E.2d 372 (1984), *affirmed*, 312 N.C. 618, 324 S.E.2d 223 (1985).

In enacting Chapter 96 of the North Carolina General Statutes, the "Employment Security Law," our General Assembly declared as the public policy of this State:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family . . . . The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this State require . . . the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed, through no fault of their own.

N.C. Gen. Stat. § 96-2. Because the Act was designed to provide protection against economic insecurity due to unemployment, it should be liberally construed in favor of applicants. *Eason, supra.*

G.S. § 96-14(1) (1991) provides in pertinent part that:

> An individual shall be disqualified for benefits . . . if it is determined by the Commission that such individual is, at the time such claim is filed, unemployed because he left work without good cause attributable to the employer.

"Good cause" connotes a reason for rejecting work that would be deemed by reasonable men and women as valid and not indicative of an unwillingness to work. *Sellers v. National Spinning Co.*, 64 N.C. App. 567, 307 S.E.2d 774 (1983), *disc. review denied*, 310 N.C. 153, 311 S.E.2d 293 (1984); *In re Clark*, 47 N.C. App. 163, 266 S.E.2d 854 (1980). A cause "attributable to the employer" is one which is produced, caused, created or as a result of actions by the employer and also includes inaction by the employer. *Ray v. Broyhill Furniture Industries*, 81 N.C. App. 586, 344 S.E.2d 798 (1986).

In *Barnes v. The Singer Co.*, 324 N.C. 213, 376 S.E.2d 756 (1989), a case involving facts similar to those in the present case, our Supreme Court reversed the Commission's denial of benefits to the claimant. In that case, the claimant, an employee of Singer Company, commuted to the employer's plant, a forty-four mile round trip, with her brother-in-law, who worked for another company

in the same town. The claimant was not licensed to operate a car, nor did she own one. When Singer moved its plant to another location eleven miles further from plaintiff's home, plaintiff no longer had transportation to work, because her brother-in-law was unable to drive her the additional distance. She was unable to secure other transportation to the new plant and quit her job with Singer.

At the time the plaintiff in *Barnes* applied for benefits, G.S. 96-14(1) disqualified claimants from receiving benefits for having left work "*voluntarily* without good cause attributable to the employer." The test for disqualification from unemployment benefits consisted of two prongs: was the termination by the employee voluntary, and if so, was it without good cause attributable to the employer. *Barnes, supra.* The Court found that an employee does not leave work voluntarily when termination is caused by events beyond the employee's control or when the acts of the employer caused the termination. *Id.* Specifically, the Court held that:

> Singer, by moving its plant, caused plaintiff's commuting distance to be increased fifty percent and in effect destroyed plaintiff's ability to go from her home to the job site. The moving of the plant was beyond the plaintiff's control. Her leaving work was in response to the removal of the plant by Singer and not an act of her own free will. Thus, the external motivating factor causing the termination of plaintiff's employment was not of her own doing but done by Singer for its own benefit. All the evidence was to the effect that plaintiff wanted to continue to work for Singer but, despite her best efforts, could not physically or economically do so.

*Id.*, at 216, 376 S.E.2d at 758-59. Because the Court decided the case based upon the "voluntariness" prong of the two pronged test, it found it unnecessary to discuss the second prong, i.e., the "good cause attributable to employer" issue.

Effective 5 July 1989, G.S. § 96-14(1) was amended to delete the "voluntary" prong of the disqualification test (except in those instances where the employee quits after being notified by the employer of a termination at some future date). 1989 N.C. Sess. Laws, ch. 583, § 7. The test for disqualification is now simply whether the employee left work without good cause attributable to the employer. We believe, however, that the rationale of *Barnes* and the similarity of its facts are sufficiently broad to support a conclusion that respondent employer's moving of its plant in

this case is "good cause attributable to the employer" for petitioner's leaving. The Commission found that petitioner left her job after her employer moved its plant from Charlotte to Mooresville because she had no reliable means of transportation to work every day of the week even though she had attempted to make a series of arrangements to get to work. The Commission also found that when petitioner became aware that her employer was moving its plant, she expressed reservations about her ability to maintain reliable transportation to work, but that due to her supervisor's encouragement, she continued work for a period of time even after the plant moved.

All of the Commission's findings of fact make clear that petitioner desired, and attempted, to continue to work for respondent employer. The relocation of the plant was an act of the employer, done for its benefit, and was an event over which petitioner had no control. Her leaving work was solely the result thereof. Thus her separation from employment was unquestionably "attributable to the employer." Under the interpretation which our courts have given to "good cause," a reasonable person would clearly view petitioner's reason for quitting her job as a valid one which does not indicate an unwillingness to work on her part, nor did the Commission find that she was unwilling to work. Although an employee's transportation to and from work is not ordinarily the employer's responsibility, petitioner's inability to get to work is the direct result of her employer's actions in moving its plant, thereby significantly changing the circumstances of her employment. The result which we reach comports fully with the policy established by our General Assembly in G.S. § 96-2 that one who becomes unemployed through no fault of their own should receive unemployment benefits.

Respondents argue, however, that petitioner in this case, unlike the claimant in *Barnes*, "chose to accept the transfer and worked for many months . . ." after the plant relocation occurred. We find this distinction inconsequential. Petitioner should not be penalized merely because she attempted to continue working after defendant chose to move the plant to another city. To the contrary, petitioner's efforts should be commended and are in line with our state's policy that unemployment benefits should go only to those who are not at fault in their unemployment. We note that courts in other jurisdictions have similarly approved the award of unemployment benefits to persons who left employment due to workplace

relocation even when the claimant had attempted to work at the new location. *See Guillory v. Office of Employment Sec.*, 525 So.2d 1197 (La.App. 1988) (employee who initially tried to make additional fifty mile round trip after employer relocated plant had "good and legal" cause for leaving work after she became nervous and emotionally upset by the drive); *Ross v. Rutledge*, 338 S.E.2d 178 (W.Va. 1985) (employer's removal of work site an additional 19.8 miles was a substantial unilateral change in the conditions of employment furnishing good cause for leaving work for ten employees who quit their jobs at the time of the move or shortly thereafter due to the added time and expense of travel).

For the foregoing reasons, we hold that the Commission erred in disqualifying petitioner from receiving benefits. The judgment of the Superior Court is reversed and this case is remanded to that court for remand to the Employment Security Commission for entry of an award of benefits in accordance with this opinion.

Reversed and remanded.

Chief Judge ARNOLD and Judge COZORT concur.