**KING v. N.C. DEPT. OF COM., DIV. OF EMP'T SEC.**

[228 N.C. App. 61 (2013)]

STEPHEN E. KING, Petitioner

v.

NORTH CAROLINA DEPARTMENT OF COMMERCE, DIVISION OF EMPLOYMENT
SECURITY and MASTEC SERVICES COMPANY, INC., Respondents

NO. COA13-58

Filed 18 June 2013

**Unemployment Compensation—disqualification from benefits—
left work without good cause attributable to employer**

The superior court erred by awarding petitioner unemployment
insurance benefits. Petitioner was disqualified from benefits because
he left work without good cause attributable to the employer.

Appeal by Respondent from judgment entered 25 October 2012 by
Judge Gary E. Trawick in Northampton County Superior Court. Heard in
the Court of Appeals 9 May 2013.

*Wilson Law Group, PLLC, by Monica Wilson, for Petitioner.*

*Sheena J. Cobrand, Esquire, for Respondent North Carolina
Department of Commerce, Division of Employment Security.*

DILLON, Judge.

The Division of Employment Security of the North Carolina
Department of Commerce (the Division) appeals from a judgment of
the superior court awarding Stephen E. King (Petitioner) unemployment
insurance benefits. We reverse.

I. Factual & Procedural Background

Petitioner was employed by Mastec Services Company, Inc. (Mastec)
as a field tech supervisor from 3 February 2010 through 15 September
2011. During that time, Mastec provided Petitioner with a company vehi-
cle, which Petitioner used to commute to and from work, a roundtrip
distance of approximately 212 miles. On 14 September 2011, Mastec
announced that it would no longer provide vehicles to its employees
for personal use; instead, Mastec would provide each employee with
a gas card and $60.00 each week to compensate for vehicle "wear and
tear." The next day, 15 September 2011, Petitioner sent Mastec an email
indicating his resignation, effective 20 September 2011, explaining that
Mastec's new vehicle policy would "greatly create a financial hardship

on me and my family[.]" Petitioner's supervisor, Leon Floyd, accepted Petitioner's resignation and directed Petitioner to leave work that day. Petitioner was paid through 20 September 2011.

Petitioner subsequently filed a claim with the Division for unemployment insurance benefits under N.C. Gen. Stat. § 96-15(a). In his claim, Petitioner indicated that Mastec's "sudden change in policy" had "created financial hardship" and that "due to distance there would be a hardship as far as oil changes[,] tires[, and] brakes[.]" The Division determined that the weekly benefit amount payable to Petitioner was $515.00 with a maximum payable amount of $13,390.00; however, Petitioner's claim was referred to the Division's Adjudication Unit, which determined that Petitioner was disqualified from benefits under N.C. Gen. Stat. § 96-14(1) because he had "left work without good cause attributable to the employer." Petitioner appealed the Adjudicator's decision to a Division Hearing Officer. After hearing testimony from both Petitioner and Leon Floyd, the Hearing Officer affirmed the Adjudicator's decision to disqualify Petitioner from benefits. Petitioner thereafter appealed to the Division, which ultimately affirmed the Hearing Officer's ruling. On 25 July 2012, Petitioner filed a Petition for Judicial Review in Northampton County Superior Court. Following a hearing on 8 October 2012, the superior court entered a judgment reversing the Division, reasoning that "the Division's findings of fact do not support the conclusion of law that [Petitioner] left work without good cause attributable to the employer." From this judgment, the Division appeals.

II. Analysis

We review the Division's final decision under the same standard of review applied by the superior court; namely, we must determine whether the Division's findings of fact are supported by competent evidence and whether those findings of fact so supported, in turn, are sufficient to support the Division's conclusions of law. *Reeves v. Yellow Transp., Inc.*, 170 N.C. App. 610, 614, 613 S.E.2d 350, 354 (2005). Unchallenged findings of fact made by the Division are binding on this Court. *Carolina Power & Light Co. v. Employment Sec. Comm'n of N. Carolina*, 363 N.C. 562, 564, 681 S.E.2d 776, 777-78 (2009). The Division's conclusions of law, however, are reviewed *de novo. Id.* at 564, 681 S.E.2d at 778.

We begin by observing that the Division made fifteen findings of fact to support its conclusion that Petitioner "left work without good cause attributable to the employer." The findings pertinent to this appeal are as follows:

**KING v. N.C. DEPT. OF COM., DIV. OF EMP'T SEC.**

[228 N.C. App. 61 (2013)]

3. The claimant left this job because he was losing use of a company vehicle to commute to and from work.

4. The claimant began working for the employer in February 2010. His commute to work was 212 miles roundtrip. The claimant had use of a company vehicle.

5. On September 14, 2011, the employer announced a change in its policy. Employees would no longer have use of a company vehicle for commuting to work. Instead, employees would be required to drive their personal vehicles. In exchange, the employer would provide each employee with a gas card for fuel. Each employee would also receive $60.00 per week to compensate for vehicle wear.

. . . .

13. The claimant had a personal vehicle that he could use to commute to work, but did not believe that $60.00 per week was sufficient consideration for wear-and-tear.

. . . .

Petitioner challenges only finding of fact 13 as unsupported by any competent evidence in the record. Specifically, Petitioner contends that "the first portion of Finding of Fact #13, that 'claimant had a personal vehicle that he could use to commute to work,' was in direct contradiction of the only evidence on the topic in the record." In his original claim filed with the Division, and in his testimony before the Hearing Officer, Petitioner indicated that he left his employment because he believed that the weekly allowance of sixty dollars would be insufficient to compensate for vehicle wear and tear due to the length of his commute. Nonetheless, Petitioner directs this Court to the following portion of his testimony before the Hearing Officer:

[Counsel for Petitioner]: Now, Mr. King, how did not having a company vehicle impact your ability to continue working at [Mastec]?

[Petitioner]: Because my commute one way to work was a hundred and six miles for a total of two hundred and twelve miles round trip. The gas card that they was providing was fine, but the sixty dollars a week for wear and tear on a vehicle, the vehicle maintenance, getting oil changes and, and tires would have well exceeded the amount of

> money that they were paying for the sixty dollar a week
> wear and tear on your vehicle. *And with that being said,*
> *my family, we only have one vehicle. So, therefore, I*
> *could not go out and purchase another vehicle for sixty*
> *dollars a week to commute back and forth a hundred and*
> *six miles one way.*

(Emphasis added). Petitioner argues that this portion of his testimony indicates that he did not have a personal vehicle that he could use to commute to work and thus contradicts finding of fact 13. However, Petitioner did not specifically testify before the Hearing Officer that his vehicle was not available for his commute to work. Petitioner did not produce any evidence through his testimony or otherwise that someone else in his family used the vehicle while he was at work. While we recognize that testimony is often open to multiple interpretations, this Court is not permitted to re-weigh the evidence presented before the Division; rather, our task is to determine only whether the testimony at issue was evidence "that a reasonable mind might accept as adequate to support the [contested] finding." *Andrews v. Fulcher Tire Sales & Serv.*, 120 N.C. App. 602, 605, 463 S.E.2d 425, 427 (1995). Applying this standard, we cannot say that the Division erred in finding that Petitioner "had a personal vehicle that he could use to commute to work" based upon Petitioner's testimony, *supra*.[1] Accordingly, Petitioner's contentions challenging finding of fact 13 are overruled.

Because Petitioner does not challenge any of the remaining findings made by the Division, we now turn to the issue of whether the Division's findings support its determination that Petitioner was disqualified from benefits because he left work without good cause attributable to the employer.

N.C. Gen. Stat. § 96-14(1) provides that "[a]n individual shall be disqualified for benefits . . . if it is determined by the Division that such individual is, at the time such claim is filed, unemployed because he left work without good cause attributable to the employer." N.C. Gen. Stat. § 96-14(1) (2011). The claimant bears the burden of showing that he left work with good cause attributable to the employer. N.C. Gen.

---

1. Petitioner asserts in his brief that "[he] and his wife owned only one personal vehicle, which his wife used to commute to her own place of employment, and which she also used to transport [Petitioner's] elderly grandmother, who lived with [Petitioner]." However, Petitioner did not testify to these "facts" at the hearing before the Hearing Officer; rather, these "facts" allude to statements made by Petitioner's counsel during the superior court hearing. As such, they were not part of the record upon which the Division based its findings and are, therefore, irrelevant for purposes of our review.

Stat. § 96-14(1a) (2011). Our Supreme Court has defined "good cause" in this context to mean " 'a reason which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work.' " *Carolina Power*, 363 N.C. at 565, 681 S.E.2d at 778 (citation omitted). "A separation is attributable to the employer if it was produced, caused, created or as a result of actions by the employer." *Id.* at 565-66, 681 S.E.2d at 778 (citations and quotation marks omitted). It is clear in this case that Petitioner left his employment as a result of Mastec's new vehicle policy. The issue presented, therefore, is whether this change in policy served as "good cause" for Petitioner's resignation.

In *Carolina Power*, our Supreme Court identified "two broad categories" of circumstances that constitute "good cause": (1) where continued employment would be "logistically impractical"; and (2) where continued employment would be "intolerable." *Id.* at 567-68, 681 S.E.2d at 779-80. With respect to the first category – which Petitioner contends applies in the instant case – the *Carolina Power* court explained that "an employee can leave work for 'good cause' under circumstances which make continued employment logistically impractical" and that "[s]uch circumstances include scheduling and transportation problems that outweigh the benefits of employment." *Id.* at 567, 681 S.E.2d at 779. The *Carolina Power* court cited *Barnes v. Singer Co.*, 324 N.C. 213, 376 S.E.2d 756 (1989) and *Couch v. Employment Sec. Comm'n*, 89 N.C. App. 405, 366 S.E.2d 574 (1988), as examples of instances where the circumstances surrounding the claimant's separation from employment constituted "good cause." *Carolina Power*, 363 N.C. at 567-68, 681 S.E.2d at 779. *Barnes* involved a claimant who no longer had transportation to work after his employer relocated its facilities. *Barnes*, 324 N.C. at 214, 376 S.E.2d at 757. "Good cause" for the claimant's separation from employment was found both in *Barnes* and in *In re Watson*, 111 N.C. App. 410, 432 S.E.2d 399 (1993), a subsequent decision in which this Court, relying on *Barnes*, reversed the superior court's decision to deny benefits where the employer's relocation left the claimant without reliable transportation to work. *Id.* at 413-16, 432 S.E.2d at 401-03. However, the Division's finding that Petitioner "had a personal vehicle that he could use to commute to work" – a finding which is binding for purposes of our review – clearly renders *Barnes* and *Watson* inapplicable in the instant case.

In *Couch*, the claimant was employed as a cook at a day care, where she worked five five-hour shifts per week. 89 N.C. App. at 408, 366 S.E.2d at 576. When the employer reduced the claimant's hours to five three-hour shifts per week (at the same pay rate), the claimant determined

that her wages no longer justified the cost of her commute to work and quit. *Id.* at 407-08, 366 S.E.2d at 576. In holding that "a unilateral, substantial reduction in one's working hours by his employer may permit a finding of good cause attributable to the employer[,]" our Supreme Court noted that "to continue on a job under reduced hours or wages . . . might not be economically feasible for the affected employee." *Id.* at 412, 366 S.E.2d at 578. However, the court concluded that it was unable to determine based upon the Division's findings whether the reduction in the claimant's hours was substantial and thus remanded to the Division to make additional findings, considering factors such as "[t]he amount of the reduction in wages or hours." *Id.* at 412-13, 366 S.E.2d at 578-79.

Here, the burden was on Petitioner to show that he left his employment with Mastec for good cause – i.e., that continued employment would have been logistically impractical – as a result of Mastec's new vehicle policy. As discussed *supra*, Petitioner's contention that he left Mastec because he lacked an available vehicle is not properly before this Court, and thus we address only his original position that, essentially, the new vehicle policy rendered his continued employment economically infeasible. More specifically, Petitioner's contention – for purposes of our review – is that $60.00 per week was insufficient compensation for the wear and tear to his personal vehicle that would result from his daily commute. However, Petitioner did not present any evidence demonstrating the extent to which he suffered financial injury. For instance, Petitioner's testimony before the Hearing Officer that "the sixty dollars a week, total of thirty-one hundred dollars a year running two hundred and twelve miles a day would not pay for the maintenance and the wear and tear on my vehicle [and] would create another financial strain on my family" is conjectural and conclusory in nature. The Division did not make any findings indicating that Petitioner had suffered any financial injury or that the new policy had otherwise rendered Petitioner's continued employment logistically impractical. *See Carolina Power*, 363 N.C. at 568, 681 S.E.2d at 780 (concluding that the claimant's continued employment would not have been logistically impractical where the Division made no such findings). Rather, the Division's findings – by which we are bound – establish that Petitioner "left [his] job because he was losing use of a company vehicle to commute to and from work" (finding of fact 3) but that Petitioner "had a personal vehicle that he could use to commute to work" (finding of fact 13). The Division did not find that $60.00 per week was insufficient consideration for wear and tear to Petitioner's vehicle; rather, the Division found only that Petitioner "*did not believe* that $60.00 per week was sufficient consideration for wear-and-tear" (finding of fact 13). We, accordingly, conclude that the

## LUMBERMANS FIN., LLC v. POCCIA

[228 N.C. App. 67 (2013)]

Division's findings are sufficient to support its conclusion that Petitioner did not leave work for good cause attributable to the employer, and our standard of review precludes us from inquiring further.

### III. Conclusion

In light of the foregoing, the judgment of the superior court is hereby

REVERSED.

Judges ELMORE and GEER concur.