IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 20-325

Filed: 1 December 2020

Haywood County, No. 19 CVS 1107

IN THE MATTER OF:

FRANK LENNANE,

        Petitioner,

ADT, LLC,

        Employer,

and

NORTH CAROLINA
DEPARTMENT OF COMMERCE,
DIVISION OF EMPLOYMENT SECURITY,

                          Respondent.


       Appeal by petitioner from order entered 17 February 2020 by Judge W. Robert

Bell in Haywood County Superior Court.  Heard in the Court of Appeals 21 October

2020.


       *North Carolina Department of Commerce, by Sharon A. Johnston, for appellee.*

       *Legal Aid of North Carolina, Inc., by Joseph Franklin Chilton, Bettina J. Roberts, John R. Keller, and Celia Pistolis, for petitioner-appellant.*


       YOUNG, Judge.

This appeal arises out of a denial of unemployment insurance benefits. The findings of fact support the conclusion of law that Petitioner failed to show that he left work for good cause attributable to the employer. The superior court did not err in denying Petitioner's motion to dismiss. Accordingly, we affirm.

## I.      Factual and Procedural History

Frank Lennane ("Petitioner") worked as a service technician for ADT, LLC ("Employer") from 1 February 2012 until 16 November 2018. Petitioner's job duties included performing regular service calls, and occasional installations for residential and commercial security systems and alarm systems. On 8 January 2014, Petitioner injured his left knee while on the job. Petitioner had knee surgery and suffered fifteen percent permanent partial injury in his left knee. Following his knee surgery, Petitioner began to favor his right knee, which resulted in new, regular pain in his right knee.

In 2016, Employer went through a business merger and combined its service and installation departments. This change caused Employers to assign more installation work to service technicians. The added installation work was more difficult on Petitioner's knees than his previous job duties, and Petitioner began taking days off work to care for his knees. He sought treatment and was diagnosed with unilateral primary osteoarthritis in his right knee.

Since installations were hard on Petitioner's knees, he asked his manager if he could transfer or apply to other local jobs, such as administrative or clerical work, however, the only positions available would require relocation from North Carolina. Petitioner also requested to be assigned to service calls only, but the manager denied the request because he needed to keep a fair balance of work distribution among all the service technicians. Petitioner's workload was "consistent with the other employees," and the manager distributed work assignments based on Employer's business needs.

By July 2017, the condition of Petitioner's right knee began to worsen. Petitioner utilized the Family and Medical Leave Act ("FMLA") to take a five-week leave of absence to rest his knees and seek additional medical intervention. When Petitioner returned to work, he provided a doctor's note which provided that he would experience flareups and pain, and "a few days rest may be necessary." Petitioner continued to perform all of his duties and responsibilities, but his problems persisted. Petitioner again asked to perform only service calls, and his request was denied. Petitioner then notified Employer that he was resigning, because he was no longer able to perform his job due to the poor condition of his knees.

Petitioner applied for unemployment insurance benefits, but an Adjudicator ruled that Petitioner left work without good cause attributable to the employer, and therefore Petitioner was disqualified from receiving benefits. Petitioner appealed the

decision to an Appeals Referee which affirmed the Adjudicator's decision. Petitioner appealed to the Board of Review of Respondent North Carolina Department of Commerce, Division of Employment Security ("BOR"), which affirmed the Appeals Referee's decision in a split decision. Petitioner petitioned to the Superior Court, and the court entered an order affirming the BOR's decision in its entirety. Petitioner has now appealed to this Court.

## II.    Standard of Review

The standard for this Court is to determine whether the findings of fact of the final agency decision are supported by any competent evidence, and then determine whether those findings support the conclusion. N.C. Gen. Stat. § 96-15(i) (2020); *Reeves v. Yellow Transp., Inc.,* 170 N.C. App. 610, 614, 613 S.E.2d 350, 354 (2005).

## III.    Final Agency Decision

Defendant contends that the superior court erred in affirming the BOR's decision that Petitioner failed to prove that his leaving work was for good cause attributable to the employer. We disagree.

> The Division must determine the reason for an individual's separation from work. An individual does not have a right to benefits and is disqualified from receiving benefits if the Division determines that the individual left work for a reason other than good cause attributable to the employer. When an individual leaves work, the burden of showing good cause attributable to the employer rests on the individual and the burden may not be shifted to the employer.

N.C. Gen. Stat. § 96-14.5 (a) (2020). "Good cause" and cause "attributable to the employer" are the two elements an employee must prove to be qualified to receive unemployment insurance benefits. "Good cause" has been interpreted by the courts to mean "a reason which would be deemed by reasonable men and women as valid and not indicative of an unwillingness to work." *King v. N.C. Dep't of Commerce*, 228 N.C. App. 61, 65, 743 S.E.2d 83, 86 (2013). The Petitioner's cause for leaving work was the condition of his knees; however, Petitioner fails to show that his cause was attributable to the employer. The cause or reason for leaving is attributable to the employer if it was "produced, caused, created or as a result of actions by the employer." *Id.*

For the entire period that Petitioner worked for Employer he was required to perform at least some installations. The number of installations increased after the 2016 merger; however, Petitioner's supervisor testified that "he was careful to limit the size of jobs that [Petitioner] went on installation-wise," and would have another technician work with him, if possible. The supervisor also testified that Petitioner only performed ten installation jobs in the three months prior to his resignation, and only one of those being a full installation. Another technician assisted Petitioner with that full installation. Petitioner has failed to show a change in job duties from the time he began his employment until the time he resigned.

In *Ray v. Broyhill Furniture Indus.,* this Court held that the claimant proved her reason for leaving "was attributable both to the employer's action (the threat to fire her if she went over her supervisor's head) and inaction (her supervisor's failure to put in her transfer request). 81 N.C. App. 586, 593, 344 S.E.2d 798, 802 (1986). However, here, Employer took actions to help Petitioner. Employer provided knee pads for kneeling and crawling, monitored Petitioner's work schedule and limited the installation jobs, as well as assigned him "lighter re-sales, add-ons, not full-blown installs." Employer also assigned other technicians to assist in the installations. Employer could not provide administrative work because that work was only available in other states. Petitioner provided no medical restrictions or limitations on bending, stooping, or crawling to Employer. The only medical request Petitioner gave Employer was in September 2017 that he not stand or walk for prolonged periods. Unlike in *Ray*, Employer took action in this case, even if the action was not what Petitioner wanted. As a result, these findings support the conclusion that Petitioner failed to show that he left work for good cause attributable to the employer.

## IV.    Findings of Fact

The standard for this Court is to determine whether the findings of fact of the final agency decision are supported by any competent evidence, and then determine whether those findings support the conclusion. N.C. Gen. Stat. § 96-15(i); *Reeves v. Yellow Transp., Inc.*, 170 N.C. App. 610, 614, 613 S.E.2d 350, 354 (2005).

a.     Finding of Fact No. 12

This finding, that "[t]he employer only had administrative positions in Spartanburg, South Carolina and Knoxville, Tennessee, and the claimant was unwilling to relocate from North Carolina," is supported by Petitioner's testimony when he said that he knew office jobs existed, but that he didn't apply for those jobs because of the distance.

b.     Findings of Fact No. 16 and No. 17

Finding of Fact No. 16, that "the claimant's manager made attempts thereafter to not dispatch the claimant on the most strenuous or large installations," is supported by Petitioner's supervisor's unrefuted testimony.  The supervisor testified that Petitioner asked him for service work or lighter install jobs.  He further testified that while he was not always able to accommodate the request, he "was careful to try to limit the size of the jobs that Petitioner went on installation-wise."  Finding of Fact No. 17, "[i]f the claimant had to be dispatched on a large installation, then manager Goodson would try to ensure that he [claimant] had another service technician available to assist him," is supported by the supervisor's testimony that there were times he assigned another technician to help with Petitioner's installs.  Petitioner also confirmed by his own testimony that the supervisor provided help on installs from time-to-time.

c.     Finding of Fact No. 18

Finding of Fact No. 18 provides that, "[i]n October 2018, the claimant had an appointment with a surgeon to discuss treatment for his knees. At which time, the claimant was told that he could undergo surgery or stem cell therapy. The claimant was unwilling to undergo either option. This finding is supported by Petitioner's testimony of the types of treatments recommended for his knee, and that he "didn't even [want to] go down that avenue."

d.     Finding of Fact No. 21

Finding of Fact No. 21 provides that "[p]rior to the claimant's resignation, he did not make any formal or written requests for workplace accommodations from either the employer's administrative or human resource staff members. During 2018, the claimant did not request intermittent leave via FMLA." This finding is supported by Petitioner's testimony that he did not consider any type of FMLA or other short-term disability. Petitioner did not provide Employer a letter from his doctor or surgeon requesting restrictions or limitations on his job. Petitioner relied on FMLA Certification by his doctor which only stated, "[p]rolonged standing and walking would be very difficult for this patient."

e.     Finding of Fact No. 22

This finding, that "[t]he claimant left his job due to personal health or medical reasons," is supported by Petitioner's testimony that his knee problems caused him to resign.

Each of the above findings are supported by competent evidence of record. Additionally, each finding supports the conclusion that the Petitioner failed to establish that his good cause for leaving work was "attributable to the employer" as required by N.C. Gen. Stat. § 96-15(i). Accordingly, the superior court did not err in denying Petitioner's motion to dismiss, nor did the court err in finding that Petitioner was not entitled to unemployment insurance benefits. Therefore, we affirm the lower court's decision.

AFFIRMED.

Judge DILLON concurs.

Judge INMAN dissents.

Report per Rule 30(e).

INMAN, Judge, dissenting.

Because in my view precedent compels us to hold that Petitioner left work for good cause attributable to the employer, I respectfully dissent from the majority's holding to the contrary.

The Employment Security Act requires "the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed *through no fault of their own*." N.C. Gen. Stat. § 96-2 (2019) (emphasis added). We are bound by this Court's previous holding that "[t]he Act is to be liberally construed in favor of applicants," *Marlow v. N.C. Emp't Sec. Com'n*, 127 N.C. App. 734, 735, 493 S.E.2d 302, 303 (1997) (citation omitted), and that "statutory provisions allowing disqualification from benefits must be strictly construed in favor of granting claims." *Id.* (citations omitted).

In *Ray v. Broyhill Furniture Indus.*, 81 N.C. App. 586, 344 S.E.2d 798 (1986), this Court held that an employee who left a job as a result of the employer's actions or inaction abandoned the employment due to "good cause attributable to her employer" and could not be denied unemployment benefits provided by the Act. *Ray*, 81 N.C. App. at 592, 344 S.E.2d at 802. We explained in *Ray* that "[t]he Act does not contemplate penalizing workers who choose in favor of their own health, safety or ethical standards and against an affirmative or *de facto* policy of the employer to the contrary." *Id.* at 593, 344 S.E.2d at 802-03 (citation omitted).

*Inman, J., dissenting*

Petitioner's deteriorating knee prevented him from performing the number of installations required of him by his employer. Respondent concedes he had good cause to resign. But, rather than giving up immediately, Petitioner sought to adapt his work to accommodate his injury by requesting he be assigned to a desk job. His employer declined that request unless he was willing to relocate to another state.

Petitioner then requested that he be assigned only to less strenuous service calls. That request was denied not because such work was unavailable, but because his employer's "business needs" required Petitioner to continue performing installations that his body could not support. Although the Petitioner's manager, per the findings of fact made below, "made *attempts* . . . to not dispatch the claimant on the most strenuous or large installations[,]" and "would *try* to ensure that [Petitioner] had another service technician available to assist him[,]" (emphasis added), the manager testified that their employer nonetheless required Petitioner to continue performing installations "consistent with the other employees" and to the detriment of his health. And while the evidence—but not any factual findings—shows that Petitioner's employer provided him with kneepads, that same evidence discloses that the kneepads were ineffective in preventing Petitioner's pain and were not a specific accommodation provided for purposes of addressing his osteoarthritis. "The Act does not contemplate penalizing workers who choose in favor of their own health, safety

or ethical standards and against an affirmative or *de facto* policy of the employer to the contrary." *Ray*, 81 N.C. App. at 593, 344 S.E.2d at 802-03 (citation omitted).

It is not Petitioner's fault that his knee suffers from osteoarthritis, nor is it his fault that his employer's "business needs" precluded accommodations that would not require him to sacrifice his health. He was thus rendered "unemployed through no fault of [his] own[,]" N.C. Gen. Stat. § 96-2. As in *Ray*, Petitioner's employer's "inaction placed [him] in the untenable position of having to choose between leaving [his] job and becoming unemployed or remaining in a job which . . . exacerbated [his medical] conditions." 81 N.C. App. at 592-93, 344 S.E.2d at 802. Consistent with that precedent, I would hold that Petitioner left work for "good cause attributable to the employer" within the meaning of N.C. Gen. Stat. § 96-14.5(a) (2019) and should not be disqualified from receiving unemployment benefits. I respectfully dissent.